## CLEMMER et v NOAH et

Ohio Appeals, 9th Dist, Summit Co

No 2708. Decided Sept 28, 1936

R. H. Nesbitt, Akron, and Frank & Ream, Akron, for plaintiffs in error.

N. O. Mather, Akron, and Waters, Andress, Wise, Roetzel & Maxon, Akron, for defendants in error.

## OPINION

By WASHBURN, J.

In the trial court this cause was disposed of upon an amended petition to which a demurrer was sustained; and the plaintiffs not desiring to plead further, final judgment was entered dismissing plaintiffs' petition.

The controversy arose out of a business venture concerning which there was a written contract between the parties; however, said written contract is before the court only by the pleading of the substance of the contract, such substance being pleaded in the amended petition.

Plaintiffs, John H. and Fred Clemmer, owned a controlling interest in a corporation which they managed and which was engaged in the business of constructing all kinds of buildings and structures, both private and public.

Andrew H. Noah was interested with his son, Robert H. Noah, and one Charles W. Frank, in similar construction work, which business was operated under the style and firm name of "Noah and Frank."

The parties had negotiations which contemplated that the name of the corporation operated by the Clemmers should be changed to the "Clemmer-Noah Construction Co.," and said Andrew H. and Robert H. Noah, by the payment to the corporation of $75,000, should become the owners of a substantial part of the capital stock of such company, and that they and said Clemmers should be directors and officers of such company and should jointly conduct the business of such corporation, all of said parties realizing that in order to prosecute the business of said corporation successfully, it would be necessary for said corporation at all times to "have command of money equal to at least fifteen per centum of the amount involved in the aggregate of the contracts on hand; that the corporation should also be able to furnish bonds or certified checks with its bids or

proposals, and likewise to furnish guaranty bonds to secure the performance of its contracts."

Such negotiations resulted in a contract in September, 1928, and the amended petition alleges that in said contract "said Andrew H. and Robert H. Noah, on the one part, * * * agreed, in writing, with the plaintiffs, that they, the said Andrew H. Noah, and Robert H. Noah, would furnish to * * * the Clemmer-Noah Construction Co., any necessary funds or credit at the prevailing rate of interest, at all times, for the general operation of the company."

There is also an allegation that such necessary funds or credit "was not to become capital of the corporation, but was to be canceled or to be returned to the said Andrew H. Noah and Robert H. Noah when no longer required by the corporation."

The petition further alleges that in pursuance of said agreement the name of the original corporation was changed to the "Clemmer-Noah Construction Co.," and that all of said parties became officers and directors as contemplated, and prosecuted the business of said corporation until the 31st day of May, 1931, when Andrew H. Noah died testate.

The petition further alleges that during the lifetime of said Andrew H. Noah he became endorser, surety and guarantor on the paper of said construction company to the aggregate amount of $453,000, and that said Andrew H. Noah likewise became surety for said corporation from time to time on such bidding and construction contracts as were needed.

The petition also alleges that the plaintiffs kept and performed all of the terms and conditions of said contract on their part to be performed, and it is not alleged that said Andrew H. Noah and Robert H. Noah failed to keep and perform the terms and conditions of said contract by them to be performed, up to the time of the death of said Andrew H. Noah, except that said Andrew H. Noah and Robert H. Noah "instead of furnishing money to the plaintiffs, supplied credit by Andrew H. Noah becoming endorser, surety or guarantor for the corporation."

Inasmuch as the obligation upon the part of Andrew H. Noah and Robert H. Noah was to furnish "any necessary funds or credit" for said corporation, they had a right to perform that obligation by furnishing credit as they did, so that the **petition shows on its face that up to the time of the death of Andrew H. Noah, he** and his son, Robert H. Noah, had performed their part of said contract.

The cause of action attempted to be stated in the petition is based upon the failure of Robert H. Noah, and the executors of the estate of Andrew H. Noah, to continue to furnish to said corporation, after the death of Andrew H. Noah, the necessary funds or credit to permit it to continue in operation. The allegation of violation of the contract, as set forth in the petition, is as follows:

"After the 31st day of May, 1931, the defendants expressly repudiated the obligations of said contract, and refused to carry out its terms and conditions, refused to extend and continue said credit of $453,000, refused to furnish new credits, and refused to provide for bidding and construction bonds for the further operations of the company."

Then there is an allegation that the plaintiffs could not obtain the credit necessary to prosecute the business of the corporation, and that such refusal to furnish credit on the part of the defendants "did so impair the corporation's financial standing that * * * the corporation has been, since the death of said Andrew H. Noah, unable to enter into any building or construction contracts, and it is, and will be hereafter, by reason of such refusal to continue said credit, debarred from engaging in the business which it is the purpose of the corporation to carry on, to their loss and damage in the sum of three hundred and fifty thousand dollars ($350,000)."

There is the further allegation in the petition that plaintiffs duly presented a written statement of their claim, duly authenticated, to the executors of the estate of said Andrew H. Noah on the 15th day of February, 1932, and demanded allowance thereof, and that said defendants refused such allowance and rejected plaintiff's claim on the 19th day of February, 1932. This suit was begun August 15, 1932.

The prayer of the petition is a judgment against Robert H. Noah and the executors of Andrew H. Noah in said sum of $350,000.

To that petition, Robert H. Noah filed his separate demurrer on the ground "that the petition does not state facts sufficient to constitute a cause of action," and the executors of the estate of Andrew H. Noah filed a demurrer to said petition upon the following grounds:

"1. That it appears upon the face of the petition that the action was not brought

within the time limit for the commencement of such action.

"2. That the petition does not state facts sufficient to constitute a cause of action in favor of the plaintiffs and against these defendants."

As has been stated, said demurrers were sustained; and the plaintiffs not asking to plead further, their amended petition was dismissed, to which judgment they excepted. We reach the conclusion that, in so doing, the trial court did not commit error.

Referring first to the alleged liability of the executors of the last will of Andrew H. Noah:

All it is claimed that Andrew H. Noah agreed to do, which he failed to do, was to furnish said corporation "any necessary funds or credit at the prevailing rate of interest, at all times, for the general operation of the company," and even that, as hereinbefore stated, it is admitted he did up to the time of his death. There is nothing in the contract as pleaded, that expressly bound his estate to continue such business venture.

Waiving for the moment the question of whether the contract, as pleaded, bound Andrew H. Noah to furnish such "funds or credit" for a longer period than he did, and assuming that at the time of his death he was obligated to continue to furnish such funds or credit, his executors could not be sued for damages for failure to perform such obligation until the plaintiffs had presented their claim to said executors; and if the executors rejected said claim, the plaintiffs were required to bring suit thereon within two months after notice of such rejection. (§§10508, 10508-12 and 10509-133, GC).

**State ex Fulton v Bremer, Admrx., 130 Oh St 227.**

The petition alleges that plaintiffs' claim was presented February 15, 1932, and was rejected February 19, 1932; and this suit was not begun within two months after such rejection, being brought on August 15, 1932.

The fact that said Andrew H. Noah died before said law became effective is of no importance. Plaintiffs could not have sued said executors until after they had presented their claim and it had been rejected, and when they presented it, said law was in full force and effect and their rights were fixed thereby, and they were required to bring their suit within two months,

which they did not do, and therefore the judgment in this case in favor of said executors was right.

Did the amended petition state a cause of action against Robert H. Noah?

It will be noted that it is alleged that Andrew H. and Robert H. Noah agreed jointly to furnish such necessary funds or credit, but that during the time the parties operated under the agreement, such credit, with the acquiescence of plaintiffs, was actually furnished by Andrew H. Noah. But if there was a joint obligation resting upon both of them, still the contract did not bind either of them to continue to furnish such credit for any particular length of time, or any definite time.

Therefore, it is necessary to interpret the promise in the light of all the surrounding circumstances, and, with reference to the subject-matter, in order to ascertain the intention of the parties.

Considering all that is alleged in the amended petition, the nature of the subject of the contract and the continuing character of the obligation, the situation of the parties, the uncertainties of the venture as to success or requirements, the uncertainty as to future business conditions or agreeable associations among the parties, the uncertainty as to the future ability of the parties to perform, either because of death or financial conditions; a consideration of these matters and all of the circumstances, as set forth in the amended petition, leads us to the inevitable conclusion that the period of time over which the obligation to furnish funds or credit should extend was purposely and intentionally left indefinite in the contract with the expectation that the parties might continue performance as long as it was mutually agreeable.

In so far as the time that the arrangement was to continue is concerned, the relationship of the parties under the contract seems to us to be very similar to the relationship existing between partners.

It is inconceivable that the parties intended to contract for perpetual performance, and the only reasonable interpretation is that if one of the parties, especially Andrew H. Noah, died, the furnishing of funds or credit would cease, at least until other arrangements were made; and considering all that is alleged in the amended petition, we have no idea that it was ever contemplated by the parties that Robert H. Noah should be compelled to furnish funds or credit after the death of his father.

Such interpretation of the contract, as pleaded, necessitates our holding that the amended petition did not state facts sufficient to constitute a cause of action against Robert H. Noah.

Judgment affirmed.

FUNK, PJ, and STEVENS, J, concur in judgment.